## 15-1481

# United States Court Of Appeals For The Third Circuit

---

District Court No. 2: -cv-13-07382 GAM

---

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
MULTIJURISDICTION PRACTICE, ET. AL.

Plaintiff/Appellants,

v.

RONALD D. CASTILLE, ET. AL.

Defendant /Respondents,

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

### APPELLANTS' OPENING BRIEF

---

Joseph Robert Giannini, Esq. PA#38814
12106 Wilshire Blvd. #5
Los Angeles, CA 90025
Phone 310 442 9386
Fax 310 207 1779
j.r.giannini@verizon.net
For Appellants

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS & AUTHORITES……………………………..1

STATEMENT OF JURISDICTION……………………………………………….1

STATEMENT OF ISSUES PRESENTED …………………………………………..1

STATEMENT OF RELATED CASES…………………………………………………1

STATEMENT OF THE CASE …………………………………………………………3

ARGUMENT

I.  SUMMARY OF ARGUMENT………………………………………………..15

II. APPELLANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER THE
FIRST AMENDMENT…………………………………………………………..20

    A. STANDARD OF REVIEW – *DE NOVO*………………………………20

    B.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS IN
    LIGHT OF *KING v. GOVERNOR OF THE STATE OF NEW JERSEY* AND
    THE PROFESSIONAL SPEECH DOCTRINE…………………………21

    C.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS
    BECAUSE THE DISTRICT COURT MISAPPLIED THE LAW ON
    *CONTENT*  AND *VIEWPOINT* DISCRIMINATION ……………………28

    D.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS
    BECAUSE THE DISTRICT COURT MISAPPLIED THE LAW ON
    *SPEAKER* DISCRIMINATION …………………………………………..35

    E.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS
    BECAUSE THE DISTRICT COURT FUNDAMENTALLY MISAPPLIED
    THE LAW BY APPLYING RATIONAL BASIS REVIEW…………….38

F. THE DISTRICT COURT MISAPPLIED EXPRESSIVE ASSOCIATION AND PETITION CLAUSE PRECEDENT……………………………….40

III. RULE 204 VIOLATES THE ARTICLE IV § 2 PRIVILEGES AND IMMUNITIES CLAUSE………………………………………………………….46

IV. RULE 204 VIOLATES THE DORMANT COMMERCE CLAUSE………..50

A. STANDARD OF REVIEW……………………………………………..50

B. RULE 204 IS *PER SE* INVALID BECAUSE IT DOES NOT REGULATE EVEN-HANDEDLY………………………………………..51

C. RULE 204 IS INVALID AS A RECIPROCAL LICENSING RESTRAINT …………………………………………………………..52

V. RULE 204 VIOLATES THE EQUAL PROTECTION CLAUSE……………55

VI. CONCLUSION AND REQUESTED RELIEF………………………………58

CERTIFICATE COMPLAINCE TYPE VOLUME LIMITATIONS……………59

CERTIFICATE OF VIRUS CHECK…………………………………………..59

CERTIFICATE OF PAPER COPIES ARE THE SAME AS ELECTRONIC COPIES………………………………………………………………...59

CERTIFICATE OF SERVICE…………………………………………………60

# TABLE OF AUTHORITIES

Page

## CASES

*Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511 (1935)……………………………..53

*Bose Corp. v. Consumers Union of United States, Inc.,*
    466 U.S. 485, 499 (1984)  …………………………………………………..21

*Brown-Forman Distillers Corp. v. New York State Liquor Authority*,
    476 U.S. 573………………………………………………………………51,52

*Carey v. Brown,* 447 U.S. 455 (1980)………………………………………Passim

*Citizens United v. Federal Election Commission,*
    __ U.S. __, 130 S.Ct. 876, (2010)…………………………………Passim

*City of Lakewood v. Plain Dealer Publishing Co,* 486 U.S. 750, 763 (1988). ..14,34

*Consolidated Edison Co. v. Public Serv. Comn'n*, 447 U.S. 530, 546 (1980)...18,34

*Edwards v. District of Columbia,* 755 F. 3d 996 (D.C. Cir. 2014)…………..Passim

*Fla. Bar v. Went For It, Inc.,* 515 U.S. 618, 634 (1995)…………………………28

*Garcetti v. Ceballos,* 547 U.S. 410, 446, 126 S.Ct. 1951, (2006)………………..27

*Great Atlantic & Pacific Tea Co. v. Cottrell,* 424 US 366 (1976)…………...Passim

*Holder v. Humanitarian Law Project,* 561 U.S.1, 130 S. Ct. 2705 (2010)…..Passim

*Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333 (1977)…………53

*In re Primus* 436 U.S. 412, 428 (1958)……………………………………………41

*King v. Governor of State of New Jersey,* 767 F.3d 216 (3rd. Cir. 2014)……Passim

*Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n,*
    429 U.S. 167, 175-176 (1976). ………………………………………14,34

*McCutcheon v. Federal Election Com'n,* __U.S. __, 134 S. Ct. 1434, 1449-1453 (2014) ………………………………………………………32

*NAACP v. Button,* 371 U.S. 415, 429 (1963)……………………………………….28,42

*NAAMJP v. BERCH,* SCt. Docket 14-1165…………………………………………….2

*New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988)………………Passim

*Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1958)…………………..40-43

*Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983)…18,34

*Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435 438–39 (3d Cir. 2000)………………………………………………………..41.42

*PITTSBURGH LEAGUE YOUNG VOTERS v. Port Authority*, 653 F. 3d 290 (3rd Cir. 2011)……………………………………………………………21

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49 (1993)……………………………………………………..45

*R.A.V. v. Minnesota*, 505 U.S. 377 (1992)………………………………...Passim

*Romer v. Evans, 517 U.S. 620 (1996)*………………………………………57,58

*Rosenberger v. Rector and Visitors of Univ. of Va*., 515 US 819, 829 (1995)..18,34

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199 (1984)…………37

*Schumacher v. Nix*, 965 F.2d 1262, 1270 (3d Cir. 1992) 578-79 (1986)…….Passim

*Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957)…………………56

*Sorrell v. IMS Health Inc*., __U.S. ___, 131 S. Ct. 2653  (2011)……………Passim

*Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985)…………..Passim

*Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988)………………..Passim

*Tolchin v. Supreme Court of New Jersey*, 111 F.3d 1099 (3d Cir. 1997) …...Passim

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 658 (1994)………..32,33

*US v. Alvarez*, __ U.S. __, 132 S. Ct. 2537, 2543 ( 2012). ………………………29

*United States v. Windsor*, __ U.S. __, 133 S.Ct. 2675 (2013)……………………57

*Ward v. Rock Against Racism*, 491 U.S. 781, 789-90 (1989)……………………35

*Wiggins v. Smith*, 539 US 510, 524 (2003)……………………………………..8

## CONSTITUTIONAL PROVISIONS

Commerce Clause………………………………………………………Passim

Equal Protection………………………………………………………..Passim

First Amendment………………………………………………………Passim

Privileges and Immunities Clause……………………………………Passim

## FEDERAL STATUTES

28 U.S.C. § 1291……………………………………………………………1

28 U.S.C. § 1331……………………………………………………………1

## PENNSYLVANIA BAR RULES

Pa. B.A.R. 201………………………………………………………………..5

Pa. B.A.R. 204 ……………………………………………………………Passim

Pa. B.A.R. 301………………………………………………………………57

Pa. B.A.R. 302………………………………………………………………56

Pa. B.A.R. Rule 311…………………………………………………………56

**MISCELLANEOUS**

ABA Multijurisdictional Practice Commission (2002) ……………………Passim

ABA Commission on Ethics 20-20 (2012) …………………………………Passim

Bedford T. Bentley, Jr. "Rethinking the Purpose of the Bar Examination,"
*The Bar Examiner*, February 2009 ……………………………………………9

Geoff Norman, "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" *The Bar Examiner*, p. 21 (Nov 2008)………..10

Rebecca White Berch, "The Case for the Uniform Bar Exam,
        "*The Bar Examiner*, Feb 2009 ……………………………………………9

## MEMORANDUM OF POINTS & AUTHORITES

## STATEMENT OF JURISDICTION

The District Court has subject matter jurisdiction under 28 U.S.C. § 1331. The final judgment was entered on December 11, 2014 (7-8a). A motion for reconsideration was timely filed on December 25, 2014. It was denied on January 26, 2015. An appeal was timely filed on February 20, 2015 (1a) This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

Whether Pennsylvania's professional licensing Rule 204 — that denies reciprocal licensing to attorneys from ten disfavored states solely and admittedly because these states do not provide reciprocal licensing to Pennsylvania's licensed attorneys — abridges the Privileges and Immunities Clauses, the Commerce Clause, the First Amendment freedoms to speech, expressive association, and to petition for the redress of grievances, and the Equal Protection Clause**?**

## STATEMENT OF RELATED CASES

There are several related pending cases challenging professional speech licensing restrictions for lawyers. In this circuit, *NAAMJP v. SIMANDLE* civil action 14 cv-3678 GAM KMW (pending in the District of New Jersey) challenges that District Court's Local Rule that denies general admission privileges to sister-state attorneys from 49 states and the District of Columbia.

Outside of this circuit, a writ of certiorari was filed in NAAMJP v. BERCH, SCT Doc. 14-1165. T hat decision sustains the Arizona Supreme Court's reciprocal licensing rules on a tit-for-tat basis, which raises an almost identical issue as this appeal.  However, this Court has expressly disagreed with the Ninth Circuit's standard of review in "professional speech" licensing cases.  *NAAMJP v. HOLDER*, civil action 14-2110 (RJC) (pending in the District of Maryland) challenges that Court's Local Rule that denies general admission privileges to sister-state attorneys on a tit-for-tat basis, much like this case, with the additional automatic rescission of general admission privileges if the attorneys subsequently obtains admission in a court that denies reciprocity to Maryland licensed attorneys. *NAAMJP v ROBERTS*, civil action 13-CV-1963 RDM (pending in the District of Columbia) challenges that Court's Local Rule that denies general admission privileges on the basis of principal office provision.  That Court has already vacated its tit-for-tat licensing rule as a result of the NAAMJP complaint filed. *ALFRIEND v. CANTIL-SAKAUYE*, 9th Cir. Docket 14-15347 & 14-15349 challenges the Northern District of California's Local Rule that denies general admission privileges to sister-state attorneys from 49 states and the District of Columbia. In sum, there are multiple inextricably intertwined lawsuits pending petitioning for the identical relief the ABA has recommended and that the Conference of Chief Justices has endorsed.

2

**STATEMENT OF THE CASE**

Appellants challenge Pennsylvania Bar Admission Rule Rule 204, an underinclusive reciprocal licensing rule for sister-state attorneys, which on its face and as applied implicates the Appellants' First Amendment freedoms to speech, expressive association, and to petition for the redress of grievances on matters of public concern in a state controlled public forum.  Pennsylvania has stipulated that the purpose and practical effect of Rule 204 is to deny reciprocal licensing to attorneys who are licensed by ten disfavored states that deny reciprocal licensing to Pennsylvania's lawyers. Pennsylvania has stipulated Rule 204 has nothing what-so-ever to do with the Appellants 'competence or client protection.  Appellants are categorically disqualified solely because they have either passed bar exams or practiced law in disfavored states that do not provide reciprocal licensing to Pennsylvania lawyers.

Initially, in order to qualify for reciprocal licensing in Pennsylvania (and in other states), the applicant has to first undergo an all-encompassing national background check that requires submission of finger prints; driving records; copies of legal pleadings in all civil, administrative, or criminal matters he or she was involved as a party including divorce; proof of law school graduation; certificates of good standing from all jurisdictions admitted; disciplinary records (if any); answer comprehensive questions about where the applicant has lived and worked

his or her entire life going back to birth, provide references, and pay a $1,500 non-refundable application fee. This background check generally takes six months to a year to complete.  Appellants do not challenge these burdens. Appellants' narrow challenge is to the wavier of the bar exam burden for otherwise qualified applicant from 40 favored states, and the denial of a waiver for otherwise qualified applicants from ten disfavored states.  Bar exams are content-based licensing tests and they are graded based on content.

Specifically, Appellants challenge Pa. B.A.R. 204 paragraphs (2), (4), and (5), which state the following prerequisites for reciprocal admission:

"(2) Is a member of the bar of a ***reciprocal*** state on active status at the time of filing of the application for admission to the bar of this Commonwealth. (Emphasis added)

"(4) Presentation of proof satisfactory to the Board that the applicant has for a period of five years of the last seven years immediately preceding the date of filing of the application for admission to the bar of this Commonwealth devoted a major portion of time and energy to the practice of law ***in one or more states***. (Emphasis added)

"(5) Presentation of proof satisfactory to the Board that the applicant has ***either taken and passed the bar examination in a reciprocal state or has devoted a major portion of time and energy to the practice of law in a***

***reciprocal state for five years of the last seven years immediately preceding the date on which an application was filed under this rule***." (Emphasis added)

Both sides stipulate Appellants are categorically disqualified under Pa. B.A.R. 204 (2),(4), and (5) as follows:

"10. ***Because Plaintiffs have not passed a bar exam in a reciprocal state or have not devoted a major portion of time and energy to the practice of law in a reciprocal state for five of the seven years immediately preceding this case, Pennsylvania Bar Admission Rule 204(5) prevents them from qualifying for admission by motion***. (Emphasis added) (50a)

"11. ***Under Pennsylvania Bar Admission Rule 201, a "reciprocal state" is one having a reciprocal agreement or arrangement with Pennsylvania so that its attorneys may be admitted to the Pennsylvania bar by motion***."(51a)

"16. ***Pennsylvania's interest in the reciprocity provision is to ease the burden of bar admission for Pennsylvania attorneys seeking to practice law in other states by easing the burden for attorneys licensed in reciprocity states to be admitted to practice law in Pennsylvania***." (Emphasis added) (52a)

In a nutshell, Pennsylvania has stipulated (i)  their sole justification for categorically disqualifying Appellants and otherwise qualified members of the bar from ten non-reciprocity states is because those states do not provide reciprocal admission to Pennsylvania attorneys; (ii) Pennsylvania's admitted sole interest for categorically disqualifying otherwise qualified members of the bar from ten  non-reciprocity states has nothing to do with their competence or client protection in Pennsylvania; and (iii) passing a bar exam in a non-reciprocal state renders that test results null and void, and practice in a non-reciprocal state can be worse than null and void because it can be used as a basis to impose qualifying practice penalties, as will be shown hereinafter with reference to Mr. ROSARIO.

This appeal arises is the midst of 21st Century revolutionary changes in information technology and a national trend for reciprocal lawyer licensing integration. The American Bar Association has in this 21st Century twice commissioned encyclopedic studies on *Client Needs in the 21st Century* and professional licensing across interstate lines. These ABA Commissions were staffed by highly respected neutral lawyers from all over the United States. They held wide-open and transparent public hearings in many states, receiving uninhibited testimony and input from virtually every state bar association and arm of the organized bar. Their findings and conclusions were then sent out for further public comment before they were adopted by the ABA's 500 member House of

Delegates. See *ABA Multijurisdictional Practice Commission* (2002).[1]    The *ABA Commission on Ethics 20-20* (2012)[2] followed the same format of compiling a massive public record; Recommendation 105E[3] concludes that all states should adopt admission on motion for all ABA accredited law school graduates with three years of experience, which means only that attorneys still have to hurdle every other state bureaucratic barrier, except taking another bar exam. The attorney still has to undergo the state's background check. The ABA concluded that the failure of states to have admission on motion (i.e. waving the bar exam requirement) injures the public and profession. It further concluded that women as a class are disproportionately injured by the failure of states to have admission on motion provisions and that the "you get reciprocity if we get reciprocity" (tit-for-tat) restrictions "only serve to sustain outdated and parochial purposes at a time when the relevance of borders will continue to erode."[4]

The *ABA Commission on Ethics 20-20* (2012) reported over 40,000 experienced lawyers have been admitted on motion in the last five years without any evidence of injury to the public or profession; 65,000 in the last ten years.

---

[1]
http://www.americanbar.org/groups/professional_responsibility/committees_commissions/commission_on_multijurisditional_practice.html

[2] http://www.americanbar.org/groups/professional_responsibility/aba_commission_on_ethics_20_20.html
[3]

http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/2012_hod_annual_meeting_105e.authcheckdam.pdf
[4] *Ibid.*

Appellants aver the ABA has essentially concluded *that one bar exam is more than enough for attorneys with three years of experience*. Appellants aver this makes perfect sense because if laymen are qualified to represent themselves as long as they are not mentally ill, it follows they are qualified to select their own counsel.  It is implausible to presume laymen are qualified to represent themselves, but experienced attorneys are not qualified to represent laymen. The Supreme Court has held professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 US 510, 524 (2003).  The Supreme Court also admits all otherwise qualified attorneys with three years of experience. *See* Supreme Court Rule 5.

Presently, 40 states have reciprocal licensing for experienced attorneys. Twenty-five of these states provide tit-for-tat reciprocal licensing. Fifteen states provide reciprocal licensing to everyone. Ten states do not provide reciprocal licensing to anyone. State judges, of course, are elected by popular vote and dependent on local attorneys for campaign contributions.  Local attorneys who are active and self-interested market participants in the market they regulate dominate Pennsylvania's licensing system for sister-state attorneys.

Additionally, because of cultural and technological advances 15 states have adopted the Uniform Bar Exam (UBE), which allows novice attorneys from these

15 states to transfer their bar exam results and obtain reciprocal licensing without any experience in these 15 states. The UBE works hand in hand with the National Conference of Bar Examiners. The UBE does not test state specific law. It follows the same 200 multiple choice question, essay and performance test format that virtually all states employ. Virtually all states work hand in hand with the National Conference of Bar Examiners on the (MBE) 200 questions multiple choice test. Arizona Chief REBECCA WHITE BERCH is the pioneer and Chair of the Uniform Bar Exam Commission. She and her UBEC colleagues are nationally recognized experts on bar admission. Justice BERCH argues, "A bar exam is a test of minimum competence to practice law,[5]" which means that once a lawyer is licensed under the UBE platform that he or she is eligible for reciprocal licensing in all UBE states. Her state of the art UBEC colleague, Maryland licensing official Bedford T. Bentley, Jr., has also spent his career focusing on lawyer licensing. He argues in support of other states adopting the UBE, "The bar examination cannot and does not test many of the skills identified by the [ABA] MacCrate Report as fundamental to the successful practice of law."[6]    Nine out of the ten skills identified as fundamental are not tested on the bar exam. It is also well known by

---

[5] Rebecca White Berch, "The Case for the Uniform Bar Exam, "*The Bar Examiner*, Feb 2009 p. 12 ("A bar exam is a test of minimum competence to practice law.")

[6] Bedford T. Bentley, Jr. "Rethinking the Purpose of the Bar Examination," *The Bar Examiner*, February 2009 p. 17

testing experts that "Study after study has shown that it is almost impossible to get judges to agree on scores for essay answers."[7]     The direct learning curve correlation between skill and experience has become popularly known as the 10,000 hour rule. Everyone knows that after years of experience practicing law a lawyer or judge's skills become automatic much like speaking (expression), relating to others (expressive association), and arguing (petitioning for the redress of grievances.)

Psychometricians have developed standards for testing and measurement. The hallmarks are *validity* and *reliability*.  For example, if a test for AIDS does not accurately prove the presence or absence of the virus the test is not *valid*. Too many false positives or false negatives undermine *validity*. *Reliability*, as in any scientific measurement, is concerned with repeatability. Does the test produce the same results every time? The ABA and UBE have concluded bar exams for experienced attorneys are neither *valid* nor *reliable*. They are not *valid* because nine out of ten fundamental lawyering skills are not measured. They are not *reliable* because it is almost impossible to get graders to agree on subjective test scores. They are also not *reliable* because a licensed attorney in good standing by definition has already proven that he or she is not a threat to the public. The issue in this case, of course, is not whether bar exams are constitutional. The issue is

---

[7] Dr. Geoff Norman, "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" *The Bar Examiner*, p. 21 (Nov 2008)

whether Rule 204's waiving a content-based licensing test for otherwise qualified attorneys coming from favored states, but not other otherwise qualified attorneys coming from disfavored states is constitutional?

Appellant NATIONAL ASSOCIATION for the ADVANCEMENT OF MULTIJURISDICTION PRACTICE (NAAMJP) is a public benefit corporation organized under California law with offices in Los Angeles.  Plaintiff, like other corporations such as in *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010) (holding corporations have First Amendment rights), is engaged in interstate commerce and advocacy throughout the United States for the purpose of improving the legal profession, by petitioning for admission on motion in the dwindling minority of jurisdictions that have not yet adopted the ABA's recommendations for reciprocal admission for all lawyers. Many members are African-American, Hispanic-Americans, women, and military veterans. These NAAMJP members have been handicapped and deprived of their constitutional rights under color of State law by Rule 204's arbitrary and capricious presumption that they are categorically ineligible for admission on motion privileges in Pennsylvania because of where they passed bar exams and are licensed as lawyers.

Appellant RICHARD H. ROSARIO is a member of the NAAMJP, a graduate of an ABA accredited law school, a well-qualified lawyer in good standing admitted to the bar of the Maryland Court of Appeals by examination in

1992, and to the bar of the District of Columbia by motion in 1994.   Mr.

ROSARIO specializes in representing banks and financial institutions in real estate

matters.  Mr. ROSARIO applied for Pennsylvania admission on motion in the past,

but was ruled categorically ineligible under Pa. B.A.R. 204 solely because he was

admitted by bar exam in Maryland a disfavored state, and more than fifty percent

of his practice is in Maryland, a non-reciprocity state.  Appellant ROSARIO was

disqualified by Rule 204 because he was admitted by motion in the District of

Columbia, but if he were admitted by bar exam in the District of Columbia he

would be qualified.  Likewise, he would have been qualified under Rule 204 based

on his substantial experience and practice in the District of Columbia, but he was

disqualified because more than fifty percent of his time and energy was spent

practicing law in Maryland, a disfavored non-reciprocity state.  Mr. ROSARIO has

been punished by the terms of Rule 204 (5) solely because he is a citizen and

resident of a disfavored non-reciprocity state. It would be futile for Mr. ROSARIO

to again apply for reciprocity under Pa. B.A.R. 204 because nothing has changed

since he was rejected.   He continues to be disabled by Rule 204.

Appellant PAUL RIVIERE is a member of the NAAMJP, a graduate of an

ABA accredited law school, a lawyer in good standing admitted to the bar of the

New Jersey Supreme Court by examination in July 2008.  Like an increasing

number of American citizens, he has worked and lived in many, many states.  His

offices are in New Jersey approximately 50 miles from Pennsylvania. He has a substantial federal bankruptcy practice, and he has many clients who do business in both Pennsylvania and New Jersey. Both RIVIERE and his clients are disabled by his not being able to represent them in the Keystone State. He is otherwise qualified for reciprocal admission under Pa. B.A.R. 204 except that New Jersey is a non-reciprocity state. He is disabled by Rule 204's licensing barrier.

The appellees are the very Hon. Chief Justice RONALD D. CASTILLE, and the Hon. Pennsylvania Supreme Court Associate Justices: THOMAS G. SAYLOR, J. MICHAEL EAKIN, MAX BAER, DEBRA McCLOSKEY TODD,  and. CORREALE F. STEVENS. This Court has repeatedly held that state governors and judges are not cloaked with immunity when sued in *general* constitutional challenges to state professional licensing rules. *King v. Governor of State of New Jersey*, *infra*; *Tolchin v. Supreme Court of New Jersey*, *infr*a; *Schumacher v. Nix*, *infra*. Both sides stipulated to the facts. The District Court held Appellants established standing, assumed the defendants did not have immunity in light of *Schumacher* and *Tolchin*, sustained Rule 204 as rational, denied Appellants' motion for summary judgment, and granted appellees' cross-motion for summary judgment.

While this case was pending, this Honorable Court carefully and comprehensively canvassed recent Supreme Court and other federal courts of

appeals decisions in its landmark decision in *King v. Governor of State of New Jersey*, 767 F.3d 216 (3rd. Cir. 2014) concerning the increasingly important subject: the tension between the First Amendment and professional licensing rules in light of recent Supreme Court decisions. The pith of this appeal is a professional licensing challenge. *King* was decided on September 11, 2014, the day after cross-motions for oral argument were heard on September 10, 2014. The *King* decision defines the circumstances when professional licensing rules are subject to either strict or intermediate level review. *King* squarely rejects rational basis review in professional licensing cases. The District Court decision upholds Rule 204 under rational basis review.

Appellants were deprived of the *King* decision on professional licensing when the case was submitted because it was not decided. Neither side briefed the *King* decision. The Memorandum appealed cites *King* in passing, but it does not analyze it. Based on *King* and other misapplications of law, Appellants' timely filed for reconsideration. The District Court held Appellants did not carry their burden for reconsideration and distinguished *King*. Appellants contend the District Court erred in formulating and applying legal precepts and appellate review is *de novo*.

Appellants in this case are American citizens and licensed lawyers in good standing. They have core fully protected rights to free speech, expressive,

association, and to petition the government for the redress of grievances that are on the highest rung of the hierarchy of First Amendment values. The decision below fails to accord them constitutional protection.

## ARGUMENT

## I. SUMMARY OF ARGUMENT

Appellants challenge Pennsylvania Bar Admission Rule 204, an underinclusive reciprocal licensing rule for sister-state attorneys, which on its face and as applied implicates the Appellants' First Amendment freedoms to speech, expressive association, and to petition for the redress of grievances on matters of public concern in a state controlled public forum. Pennsylvania has stipulated that the purpose and practical effect of Rule 204 is to deny reciprocal licensing to attorneys who are licensed by ten disfavored states that deny reciprocal licensing to Pennsylvania's lawyers. Pennsylvania has stipulated Rule 204 has nothing what-so-ever to do with the Appellants 'competence or client protection.

This appeal arises is the midst of 21st Century revolutionary changes in information technology and a national trend for reciprocal lawyer licensing integration. The American Bar Association has in this 21st Century twice commissioned encyclopedic studies on *Client Needs in the 21st Century* and professional licensing across interstate lines. The ABA concluded that all states should adopt admission on motion for all ABA accredited law school graduates

with three years of experience. Additionally, because of cultural and technological advances 15 states have adopted the Uniform Bar Exam (UBE), which allows novice attorneys from these 15 states to transfer their bar exam results and obtain reciprocal licensing without any experience in these 15 states.

While this case was pending, this Honorable Court carefully and comprehensively canvassed recent Supreme Court and other federal courts of appeals decisions in its landmark decision in *King v. Governor of State of New Jersey*, 767 F.3d 216 (3rd. Cir. 2014) concerning the increasingly important subject: the tension between the First Amendment and professional licensing rules in light of recent Supreme Court decisions. Appellants were deprived of the *King* decision on professional licensing when the case was submitted because it was not decided. Neither side briefed the *King* decision.

The District Court misapplied this Court's precedent by discarding *King* and not following the standard of review set forth in *King*. Rule 204 is a regulation of professional speech that is obviously subject to strict scrutiny review because Rule 204 admittedly was *no*t "***enacted pursuant to the State's interest in protecting its citizens from ineffective or harmful professional services***." "***A state law may be subject to strict scrutiny if designed to advance an interest unrelated to client protection***." (Emphasis added) *Ibid*. Appellees have admitted Rule 204 has nothing what-so-ever to do with competence or client protection. The admitted sole

purpose of Rule 204 is to facilitate Pennsylvania lawyers getting admitted in other states. Plaintiffs are entitled to Summary Judgment under *King*. Appellees have not submitted any substantive evidence, studies, or Declarations in their Motion for Summary Judgment that demonstrates Rule 204 serves a compelling state interest, that it is narrowly tailored, and that it is the least restrictive alternative. Appellees have not submitted any evidence rebutting the ABA and UBEC commission findings recommending reciprocal licensing.

Even under the intermediate standard of review, Rule 204 fails. Appellees have the burden of proof under the intermediate level of review. They have not proven that Appellants present a clear and present danger of harm, or that their blanket disqualification is to prevent harms in a direct and material way.

Here, the District Court erred in formulating and applying legal precepts because it neither applied strict scrutiny nor intermediate scrutiny, but instead mistakenly applied rubber-stamp rational basis on Appellants' First Amendment licensing claims in direct violation of *King*. The District Judge Memorandum mistakenly places the burden of proof and persuasion on the Appellants, when the appellees have the burden of proof to justify Rule 204.

The Memorandum appealed flies over well settled law that, "[A] regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination."

*Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 546 (1980). "Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of* Va., 515 US 819, 829 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983). "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." *Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-176 (1976). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *City of Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988).

The District Court erred in formulating and applying legal precepts because the decision appealed contradicts *Holder v. Humanitarian Law Project*, 561 U.S.1, 130 S. Ct. 2705 (2010). The *King* decision analyzes and cites *Holder* with approval, *King*, 767 F.3d at 225, but the District Judge below fully ignores *Holder* and it does not adhere to *King*. In *Holder v. Humanitarian Law Project*, a federal statute making it a crime to aid foreign terrorist organizations, including advice of the law, was challenged. The government claimed the only thing at issue was conduct and not speech. *Humanitarian Law Project* **makes clear that verbal or**

18

**written communications, even those that function as vehicles for delivering professional legal services, to aid foreign terrorist organizations are "speech" for purposes of the First Amendment**. (emphasis added) 561 U.S. at 27-28, 130 S.Ct. 2705. See Chief Justice ROBERTS' majority conclusion: "The Government is wrong that the only thing actually at issue in this litigation is conduct, and therefore wrong to argue that *O'Brien* provides the correct standard of review. *O'Brien* does not provide the applicable standard for reviewing a content-based regulation of speech." 130 S.Ct. at 2723.

Moreover, the *Humanitarian Law Project* Court unanimously rejected the intermediate standard of review and applied strict scrutiny. The Memorandum Decision is fundamentally flawed because it applies an incorrect rational basis standard of review, and it compounds this systemic error by placing the burden of proof and persuasion on Appellants.

The Memorandum appealed also violates the Article IV § 2 Privileges and Immunities Clause, Commerce Clause, and Equal Protection Clause. For example, *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988), squarely holds that bar admission on motion for sister-state attorneys is a constitutionally protected Privilege and Immunity. There, every out-of-state licensed attorney (i.e. citizen) would qualify for reciprocity if they moved to Virginia. Ms. Friedman did not want to move to Virginia to qualify. The discrimination there was plainly against

applicants (out-of-state attorneys) on the basis of citizenship or residence, as they are interpreted interchangeably. Virginia argued Ms. Friedman could take the bar examination, and thus the Clause was not offended. The Supreme Court rejected this contention. The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment. The Supreme Court stated, "we see no reason to assume that nonresident attorneys who, like Friedman, seek admission to the Virginia bar on motion will lack adequate incentives to remain abreast of changes in the law or to fulfill their civic duties." *Id*. at 69.  *Friedman* holds the State has the burden of proof under the strict scrutiny standard.  The facts here and in *Friedman* are virtually identical. Rule 204 categorically disqualifies Appellants and lawyers (citizen applicants) in ten disfavored states. If a state cannot disqualify otherwise qualified applicants from 49 states as in *Friedman*, it obviously cannot single out and disqualify applicants from ten disfavored states. The Memorandum appealed vacates *Friedman*.

## II. APPELLANTS ARE ENTITLED TO SUMMARY JUDGMENT UNDER THE FIRST AMENDMENT

### A, STANDARD OF REVIEW – DE NOVO

The Appellate Court has an independent duty to review the facts and *law de novo*.  In First Amendment cases we must "make an independent examination of the whole record, (internal cites omitted) so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression."

*Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S. 485, 499 (1984);

PITTSBURGH *LEAGUE YOUNG VOTERS v. Port Authority*, 653 F. 3d 290, 295

(3rd Cir. 2011).

### B.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS IN LIGHT OF *KING v. GOVERNOR OF THE STATE OF NEW JERSEY* AND THE PROFESSIONAL SPEECH DOCTRINE

In  *King v. Governor of State of New Jersey*, 767 F. 3d 216 (3rd Cir. 2014),

this Court observed:

> "When a professional regulation restricts what a professional can and cannot say, however, it creates a "collision between the power of government to license and regulate those who would pursue a profession or vocation and the rights of freedom of speech and of the press guaranteed by the First Amendment." *Id*. at 229.

Here, Pennsylvania Bar Rule 204 creates an identical parallel, "collision

between the power of government to license and regulate those who would pursue

a profession or vocation and the rights of freedom of speech." *Ibid*.  Rule 204 in

purpose and affects is a licensing restriction on what Appellants can and cannot say

as professionals on matters of public concern in Pennsylvania and its courtrooms.

This Court in its well-crafted benchmark opinion analyzes Supreme Court

decisions on professional speech, and what other Circuits are presently holding in

this collision between professional speech and the First Amendment freedoms.

This nationally respected Appellate Court in discussing professional regulation of

constitutionally protected freedoms further observed:

"Licensed professionals, through their education and training, have access to a corpus of specialized knowledge that their clients usually do not. Indeed, the value of the professional's services stems largely from their ability to apply this specialized knowledge to a client's individual circumstances. Thus, clients ordinarily have no choice but to place their trust in these professionals, and, by extension, in the State that licenses them." *Id.* at 232.

Here, Appellants in this case are licensed professionals. Rule 204 regulates professional speech. It suppresses freedom of expression. Plaintiffs have challenged it under five separate prongs of the First Amendment.

This Court announced its holding as the following:

"Thus, we hold that a prohibition of professional speech is permissible only if it "directly advances" the State's "substantial" interest in protecting clients *from ineffective or harmful professional services, and is "not more extensive than necessary to serve that interest."* (cites omitted) (Emphasis added)   In so holding, we emphasize that *a regulation of professional speech is spared from more demanding scrutiny only when the regulation was, as here, enacted pursuant to the State's interest in protecting its citizens from ineffective or harmful professional services*. Because the State's regulatory authority over licensed professionals stems from its duty to protect the clients of these professionals, *a state law may be subject to strict scrutiny if designed to advance an interest unrelated to client protection*. *Id.* at 235 (Emphasis added)
"Similarly, a law that is not intended to protect a professional's clients, but to insulate certain laws from constitutional challenge, is more than just a regulation of professional speech and, accordingly, intermediate scrutiny is not the proper standard of review. *Ibid.*"

The District Court misapplied this Court's precedent by discarding *King* and not following the standard of review set forth in *King*. Rule 204 is a regulation of professional speech that is obviously subject to strict scrutiny review because Rule 204 admittedly was *no*t "**enacted pursuant to the State's interest in protecting its**

*citizens from ineffective or harmful professional services*." (Emphasis added) *Ibid*. "*A state law may be subject to strict scrutiny if designed to advance an interest unrelated to client protection*." *Ibid*. Appellees have admitted Rule 204 has nothing what-so-ever to do with competence or client protection. The admitted sole purpose of Rule 204 is to facilitate Pennsylvania lawyers getting admitted in other states. Plaintiffs are entitled to Summary Judgment under *King*. Appellees have not submitted any substantive evidence, studies, or Declarations in their Motion for Summary Judgment that demonstrates Rule 204 serves a compelling state interest, that it is narrowly tailored, and that it is the least restrictive alternative. Appellees have not submitted any evidence rebutting the ABA and UBEC commission findings recommending reciprocal licensing.

Even under the intermediate standard of review, Rule 204 fails. The intermediate level of scrutiny means:

> "the State must establish the harms it believes …."are real, not merely conjectural, and that the regulation will in fact affect those harms in a direct and material way. *Id*. at 238

Appellees have the burden of proof under the intermediate level of review. They have not proven that Appellants present a clear and present danger of harm, or that their blanket disqualification is to prevent harms in a direct and material way. Pennsylvania has stipulated that Appellants are not disqualified because of client protection concerns, or because they will provide ineffective or harmful

professional services. Appellees have failed to submit any evidence, legislative or judicial findings, declarations, or anecdotal evidence that it has a substantial state interest in waiving content-based bar exams for favored state attorneys but not disfavored state attorneys. The record is utterly devoid of evidence that the burdens of studying for and passing Pennsylvania's bar exam does anything at all to advance a legitimate government objective.   There are also less restrictive alternatives available such as requiring Appellants to pay the $1,500 application fee, attend continuing legal education courses, and pay annual bar dues. There are other means available to the state short of banning lawyers from ten states. Pennsylvania can lobby or file a petition on behalf of its attorneys with the disfavored states requesting reciprocal licensing.

The appealed Memorandum fundamentally misapplies the law by subjecting Rule 204 to rubber stamp rational basis review. In *King*, the District Court applied rational basis review. This Court rejected rational basis as the standard; it rejected the conclusion therein that professional licensing rules are wholly outside of and exempt from First Amendment scrutiny:

> "Here the District Court went one step further when it concluded that ... counseling is pure, non-expressive conduct that falls wholly outside the protection of the First Amendment" *Id*. at 227

The Third Circuit vacated this *King* District Court's rational basis conclusion, and its citation and reliance on Ninth Circuit precedent. *King* further

expressly disagrees with the Ninth Circuit's standard of review in professional speech cases. *King* cites Ninth Circuit Judge O'SCANNLAIN'S dissert with approval.  *Id*. at 227-229 Here, the District Court mistakenly cited the Ninth Circuit's decision three times (17a, 33a, 40a) as authority on a similar Arizona tit-for-tat bar admission challenge. Appellants contend the District Court either did not read or he did not understand *King* before the Memorandum was filed.

This Court's exceptionally well-reasoned *King* decision is in accord with what other Circuits are holding in the tension between the First Amendment and professional speech cases. In *Edwards v. District of Columbia*, 755 F. 3d 996 (D.C. Cir. 2014), the District of Columbia's licensing scheme for tour guides was held to be an unconstitutional, content-based restriction of their First Amendment rights, on which the government did not meet its burden of proof under heightened scrutiny. There, the District of Columbia's 100 multiple-choice test tour guide operators were required to pass and other licensing permit restrictions were challenged.  The Tour Guide license applicants must master subject-matter from fourteen categories concerning the history, landmarks, and architecture of the city. The applicants contended the regulations' restriction on their speech violates the First Amendment:

> First, they contend the record is "utterly devoid" of evidence that the burdens of studying for and passing the 100-question exam "do anything at all to advance a legitimate government objective." Second, they argue there is no

evidence in the record the District's interests would be achieved less effectively absent the exam requirement. We agree." *Id*. at 1000

The District of Columbia Circuit Court of Appeals further reasoned. "We need not determine whether strict scrutiny applies, however, because assuming the regulations are content-neutral, we hold they fail even under the more lenient standard of intermediate scrutiny."  The Court placed the burden of proof and persuasion on the government. "The record contains no evidence ill-informed guides are indeed a problem for the District's tourism industry… (cites omitted) ("[I]n the realm of First Amendment questions[,]... the [legislature] must base its conclusions upon substantial evidence."). *Id*. at 1003-04. "Reliance on decades-old evidence says nothing of the present state of affairs. Current burdens demand contemporary evidence. (cites omitted) ("[A] statute's current burdens must be justified by current needs."). *Ibid*.

The *Edwards* Court held:

The District failed to present any evidence the problems it sought to thwart actually exist. Even assuming those harms are real, there is no evidence the exam requirement is an appropriately tailored antidote. Moreover, the District provided no explanation for abjuring the less restrictive but more effective means of accomplishing its objectives. Because this lack of narrow tailoring is hardly unique to Appellants, we sustain both their facial and as-applied challenges to the offending regulations.[14] The district court's grant of summary judgment in favor of the District is, therefore, reversed, and we remand the case with instructions to grant Appellants' motion for summary judgment. *Id*. at 1009

Here, Appellants have already passed bar exams in other states. Appellees have stipulated Appellants are not a threat to the public. They are licensed attorneys in good standing bound by codes of professional responsibility. *See* also *Garcetti v. Ceballos*, 547 U.S. 410, 446, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (Breyer, J., dissenting) (noting that where speech "is subject to independent regulation by canons of the profession ... the government's own interest in forbidding that speech is dim.") Pennsylvania has not shown that its interest in getting other states to grant reciprocal licensing to its attorney cannot be achieved by less restrictive means; such as lobbying other states or filing a petition on behalf of its attorneys. Pennsylvania has also not demonstrated why simply opening up its bar membership will not result in other state's opening up their bar membership. Eighty percent of the United States is already on board with reciprocal waiving of bar exams. The ABA and UBEC industry standard is bar exams to establish entry level competence for already licensed attorneys are antiquated, much like literacy tests on the right to vote or the 17th Century licensing of printing presses.

In sum, the District Court's conclusion that Rule 204 is subject to rational basis review abjures *King* and *Edwards*, and it compounds this error throughout the Memorandum by egregiously misapplying the *King* and *Edwards* heightened scrutiny standard of review holding. As in *Edwards*, there is also no evidence in the record including empirical studies, judicial or legislative findings, declarations,

or anecdotal evidence justifying that the Rule 204 punishment is necessary, or that it is narrowly tailored. The government has the burden of proof. They have not met it. They cannot meet it.

### C.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS BECAUSE THE DISTRICT COURT MISAPPLIED THE LAW ON *CONTENT* AND *VIEWPOINT* DISCRIMINATION

The First Amendment provides an injunction against the government abridging the People's freedoms to speech, expressive association, and to petition for the redress of grievances. Rule 204 on its face and as applied, however, provides an injunction that vacates the First Amendment injunction. This injunction encumbers speaker and speech, constrains content and viewpoint, and inhibits messenger and message in the public forum and marketplace of ideas. It is the polar opposite of uninhibited, robust, and wide-open. The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by all government." (Emphasis added)  *NAACP v. Button*, 371 U.S. 415, 429 (1963). It is thus a form of political expression. *Ibid*.  We afford speech to the public "by attorneys on public issues and matters of legal representation the strongest protection our Constitution has to offer." *Fla. Bar v. Went For It, Inc*., 515 U.S. 618, 634, (1995)(applying First Amendment intermediate scrutiny to a Florida bar advertising case.)

Attorneys from 40 favored states are not subject to Pennsylvania's Rule 204 injunction. Rule 204 on its face and as applied is obvious impermissible content and viewpoint discrimination: "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *US v. Alvarez*, __ U.S. __, 132 S. Ct. 2537, 2543 ( 2012). (internal cites omitted) As a result, the Constitution "demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality." *Id*. at 2544 In light of the substantial and expansive threats to free expression posed by content-based restrictions, this Court has rejected as "startling and dangerous" a "free-floating test for First Amendment coverage ... [based on] an ad hoc balancing of relative social costs and benefits." *Ibid*.  "The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom." *Id*. 2548  *US v. Alvarez* holds that even knowing lies are analyzed as a content-based restriction. The Supreme Court overturned the *Stolen Valor Act*, 18 U.S. § 704  as a content based restriction on free speech.  On its face and as applied, Rule 204 is a content-based restriction on free speech that is subject to strict scrutiny review. (This is what *King* holds).

Likewise, in *Carey v. Brown*, 447 U.S. 455 (1980), the legislature generally banned residential picketing but created an exemption for labor picketing. The legislature disapproved of the medium not the picketer's content-based message. Nevertheless, the Supreme Court held,

> "[W]hile a municipality may constitutionally impose reasonable time, place, and manner regulations on the use of its streets and sidewalks for First Amendment purposes, and may even forbid altogether such use of some of its facilities; what a municipality may not do under the First and Fourteenth Amendments is to discriminate in the regulation of expression on the basis of the content of that expression. *Id*. at 471-72 STEWART concurring.

Here, as in *Carey v. Brown*, Pennsylvania regulates expression; it gives a license to petition and associate on behalf of their clients to attorneys from 40 states (including D.C.), but withholds that license permit to Appellants and otherwise qualified applicants from ten states. As in *Carey v. Brown*, Rule 204 approves and disapproves of the messenger, and not necessarily the message. *Carey v. Brown* demonstrates both that Rule 204 constitutes content discrimination, and the District Court decision holding Rule 204 does not constitute content discrimination is reversible error.

Likewise, even in the context of unprotected expression (fighting words, threats, etc.) Rule 204 on its face and as applied is obvious impermissible content discrimination in light *R.A.V. v. Minnesota*, 505 U.S. 377 (1992), which the decision does not address. Minnesota enacted a statute that criminalized cross-

burning and other threatening conduct "on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor." *Id*. at 379. *R.A.V.* deals with bigoted *speech* and *threats* (i.e. "fighting words"). The Supreme Court overturned the conviction and invalidated the statute reasoning: "Assuming, arguendo, that all of the expression reached by the ordinance is proscribable under the "fighting words" doctrine, we nonetheless conclude that the ordinance is facially unconstitutional in that it prohibits otherwise permitted speech solely on the basis of the subjects the speech addresses. *Id*. at 381 "The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." (internal cites omitted). Content discrimination "raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace." *Id*. 387. ***Respondent "has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules.*** *Id*. at 392. (Emphasis added)

The District Court Memorandum ignores that Rule 204 serves as an injunction that trespasses the First Amendment injunction that Congress shall make no law abridging the First Amendment freedoms to speech, assembly, and petition. The Memorandum holds:

> With regard to Plaintiffs' argument that Rule 204 discriminates because it treats lawyers differently, I am persuaded by the Supreme Court's rejection

of a similar argument in *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 658 (1994). Appellants in that case asserted that all laws favoring one speaker over another should be presumed invalid. The Court countered that its case law in fact "stands for the proposition that laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Id*. at 658. (41a)

Much like a blind man touching an elephant's trunk may describe it as a snake, the Memorandum's reliance on *Turner* is incomplete and incorrect for several reasons. First, Pennsylvania has admitted that it has enacted Rule 204 because of disagreement with disfavored state's licensing policies for Pennsylvania lawyers.  Hence, Rule 204 demands strict scrutiny because it discriminates against speakers, i.e. messengers. As in *Carey v. Brown*, it does not matter what the content of the signs say. What matters is the government favoring one group over another. Pennsylvania cannot license one side of a debate to fight free-style and the other to follow Marquis of Queensberry rules.   The whole point of the First Amendment is to protect individual speech that the majority might prefer to restrict, or that the legislature or judges might not view as useful to the democratic process.  *McCutcheon v. Federal Election Com'n*, supra, __U.S. __,  134 S. Ct. 1434, 1449-1453 (2014)  Rule 204 plainly violates the First Amendment injunction Congress shall make no law abridging the First Amendment expression freedoms.

Second, the *Turner* decision applied intermediate review, not rational basis. The Memorandum confuses two separate and different distinct standards. Rational basis review is far different than intermediate level review for First Amendment

cases. *Turner* is factually in a different classification scheme. In *Turner*, sections 4 and 5 of the *Cable Television Consumer Protection and Competition Act of 1992* require cable television systems to devote a portion of their channels to the transmission of local broadcast television stations under the First Amendment. The must-carry provisions also burden cable programmers by reducing the number of channels for which they can compete. *Id*. at 645  The Memorandum cites it out of context.  *Turner* has nothing what-so-ever to do with Rule 204 or the right to petition the Courts for the redress of grievances in a designated public forum for the filing of petitions. The First Amendment protects ***"litigation [as] a means for achieving the lawful objectives of equality by all government***." (Emphasis added) *NAACP v. Button*, 371 U.S. 415, 429 (1963).  It is thus a form of political expression. *Ibid*.

As in *King*, the *Turner* Court held not every interference with speech triggers the same degree of scrutiny under the First Amendment, we must decide at the outset the level of scrutiny applicable to the must-carry provisions.  The Court in *Turner* held the intermediate standard of review was applicable.

Here, the District Court erred in formulating and applying legal precepts because it neither applied strict scrutiny nor intermediate scrutiny, but instead mistakenly applied rubber-stamp rational basis on Appellants' First Amendment licensing claims in direct violation of *King*.  The District Judge Memorandum

mistakenly places the burden of proof and persuasion on the Appellants, when the appellees have the burden of proof to justify Rule 204.

The Memorandum appealed flies over well settled law that, "[A] regulation that denies one group of citizens the right to address a selected audience on controversial issues of public policy is plainly viewpoint discrimination." *Consolidated Edison Co. v. Public Serv. Comn'n*, 447 U.S. 530, 546 (1980). "Viewpoint discrimination is thus an egregious form of content discrimination." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 US 819, 829 (1995); *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U. S. 37, 46 (1983). "To permit one side of a debatable public question to have a monopoly in expressing its views is the antithesis of constitutional guarantees." *Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-176 (1976). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988).

As to the intermediate standard of review, Rule 204 is not a time, place, and manner restriction because it is not viewpoint and content neutral.[8]  ***Rule 204 permits freestyle licensing and debate by one group of otherwise qualified experienced attorneys while compelling another group of otherwise qualified attorneys to follow Marquis of Queensberry rules.***  (Emphasis added) Therefore, Rule 204 is content and viewpoint discrimination, and unconstitutional.

### D.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS BECAUSE THE DISTRICT COURT MISAPPLIED THE LAW ON *SPEAKER* DISCRIMINATION

The District Court's Memorandum further censors Petitioners' claim that Rule 204 constitutes impermissible *speaker* discrimination by the judiciary by refusing to address it. Law does not cease to exist because it is  ignored. In *Citizens United v. Federal Election Commission*, __ U.S. __, 130 S.Ct. 876, (2010), the Court held:

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies

---

[8] To be upheld as a constitutional time, place or manner restriction a permit requirement applying to First Amendment activity must "(1) be content-neutral, (2) be narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels of expression." *Ward v. Rock Against Racism*, 491 U.S. 781, 789-90 (1989). The tit-for-tat restrictions are not time, place or manner restrictions because they are not content and viewpoint neutral.  A desire to target a disfavored class of speakers is on its face content discrimination.  Pennsylvania is favoring certain otherwise qualified lawyers over others.

certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Id*. at 890

…

***Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored***. *Id*. at 890 (Emphasis added)

The basic premise underlying the Court's ruling in Citizens United is the proposition that the First Amendment bars regulatory distinctions based on a speaker's identity. *Id*. at 930 (Justice STEVENS in dissent). Courts, too, are bound by the First Amendment. *Id*. at 891. In *Citizens United*, the Court held the challenged Federal Election Commission Rules were a prior restraint and on their face chilled the corporation's speech. *Id*. at 895-96 ("These onerous restrictions thus function as the equivalent of prior restraint by giving the FEC power analogous to licensing laws implemented in 16th- and 17th-century England, laws and governmental practices of the sort that the First Amendment was drawn to prohibit.") The Memorandum appealed likewise subjects the Appellants to Pennsylvania's licensing police much like the licensing of printing presses in the 16th and 17th Centuries. Rule 204 as applied to Appellants functions as a content-

based prior restraint. Under *Citizens United*, it constitutes both impermissible speaker discrimination and a prior restraint.

Likewise, the decision appealed contradicts *Sorrell v. IMS Health Inc.*, __U.S. ___, 131 S. Ct. 2653 (2011). The *King* decision analyzes and cites *Sorrell* with approval. *King*, 767 F.3d at 236. The District Judge below fully ignores *Sorrell*. In *Sorrell*, a Vermont statute on its face disfavored certain speech by certain speakers. (Rule 204 disfavors certain speech by certain speakers.) Vermont argued there was a danger in subjecting regulated commercial regulatory speech to First Amendment strict or immediate scrutiny. The Supreme Court flatly rejected this claim. *Id.* at 2576 Sorrell emphasizes: An individual's right to speak is implicated when information he or she possesses is subjected to "restraints on the way in which the information might be used" or disseminated. *Id.* at 2666 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). "[T]he general rule is that the speaker and the audience, not the government, assess the value of the information presented." *Id.* at 2571 *Sorrell* further holds the Vermont law is unconstitutional because it places burdens on the identity of the speaker, and it is content and viewpoint discrimination: "The Court has recognized that the 'distinction between laws burdening and laws banning speech is but a matter of degree' and that the 'Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans.' (cites omitted)

Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content." *Id*. at 2663. "At the same time, the State has left unburdened those speakers whose messages are in accord with its own views. This the State cannot do." *Id.* at 2672.

In *Sorrell*, the Supreme Court recognized that the First Amendment prohibits laws where "[t]he State seeks to achieve its policy objectives through the indirect means of restraining certain speech by certain speakers." *Id*. at 2570.  Here, Rule 204, as in *Sorrell* and in *King* is unconstitutional because it disfavors certain speech (advocacy, expressive association, and petition freedoms in a designated public forum on matters of public concern) by certain disfavored speakers (lawyers licensed in non-reciprocity states.) "Even if the hypothetical measure on its face appeared neutral as to content and speaker, its purpose to suppress speech and its unjustified burdens on expression would render it unconstitutional."  *Sorrell,* 131 S. Ct. at 2664. Here, Pennsylvania has admitted that the purpose of Rule 204 is to single out and suppress the expression of disfavored speakers from ten states. Rule 204 is not content and speaker neutral and it is not constitutional.

### E.  SUMMARY JUDGMENT IS WARRANTED FOR APPELLANTS BECAUSE THE DISTRICT COURT FUNDAMENTALLY MISAPPLIED THE LAW BY APPLYING RATIONAL BASIS REVIEW

The District Court erred in formulating and applying legal precepts because the decision appealed contradicts *Holder v. Humanitarian Law Project*, 561 U.S.1,

130 S. Ct. 2705 (2010).   The *King* decision analyzes and cites *Holder* with approval, *King*, 767 F.3d at 225, but the District Judge below fully ignores *Holder* and it does not adhere to *King*.

The decision appealed by applying rational basis fails to adhere to the Supreme Court's decision and application of the strict scrutiny standard of review in *Holder v. Humanitarian Law Project*, 561 U.S.1, 130 S. Ct. 2705 (2010).  In a challenge to a federal statute making it a crime to aid foreign terrorist organizations, ***including advice of the law***, the government claimed the only thing at issue was conduct and not speech.  *Humanitarian Law Project* makes clear that verbal or written communications, even those that function as vehicles for ***delivering professional legal services, to aid foreign terrorist organizations are "speech" for purposes of the First Amendmen***t. (emphasis added) 561 U.S. at 27-28, 130 S.Ct. 2705. *See* Chief Justice ROBERTS' majority conclusion:

> "The Government is wrong that the only thing actually at issue in this litigation is conduct, and therefore wrong to argue that *O'Brien* provides the correct standard of review. *O'Brien* does not provide the applicable standard for reviewing a content-based regulation of speech." 130 S.Ct. at 2723.

Moreover, the *Humanitarian Law Project* Court unanimously rejected the intermediate standard of review and applied strict scrutiny.

The Memorandum Decision is fundamentally flawed because it applies an incorrect rational basis standard of review, and it compounds this systemic error by

placing the burden of proof and persuasion on Appellants.  As noted above, appellees did not submit any substantive evidence of studies proving Rule 204 meets even intermediate scrutiny review.

### F.  THE DISTRICT COURT MISAPPLIED EXPRESSIVE ASSOCIATION AND PETITION CLAUSE PRECEDENT

The decision below recognizes:  "[T]he Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984). "Government actions that may unconstitutionally infringe upon this freedom can take a number of forms. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group. *Ibid*.  The Court in *Roberts* applied the strict scrutiny standard of review and invalidated the restriction.  Rule 204 imposes penalties and withholds benefits because of Appellants' membership in a disfavored class of otherwise qualified attorneys.

However, the decision appealed holds:

"I find that Rule 204 does not violate this aspect of the right to association. First, as discussed above, "A lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns." *Ohralik*, 436 U.S. at 459. I cannot see how joining a particular state's bar can be considered association in any meaningful sense "for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition." *Jaycees*, 468 U.S. at 617. The Third Circuit

rejected a fraternity's claim that its host university violated its associative rights, in part because although "almost any government sanction could be characterized as having some indirect effect on First Amendment activities … , indirect and attenuated effects on expression do not rise to the level of a constitutional violation." *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435 438–39 (3d Cir. 2000). Any impact of Rule 204 on lawyers' ability to engage in protected expression and association is highly at best indirect and highly attenuated." (45-46a)

Once again the Memorandum appealed confuses the standard of review and who has the burden of proof. *Ohralik v. Ohio State Bar Ass'n* is a solicitation (advertising) case in which the Supreme Court applied intermediate review, not rational basis review.   *Ohralik* involved a lawyer soliciting teenage clients in a hospital right after an accident. The Supreme Court granted certiorari review, holding the State was within its authority for sanctioning a lawyer for breaching his professional responsibilities. *Ohralik* has nothing to do with Rule 204. *Ohralik* does not implicate a content-based bar exam pass to lawyers from forty states, nor does it hold some lawyers in Ohio cannot solicit minors in the hospital but other favored lawyers can.   The professional responsibility rule implicated in *Ohralik* applies to all lawyers. *Ohralik* is a *conduct-based* restriction like the draft-card burning in *O'Brien*.  Here, by contrast, Rule 204 is *content-based* discrimination.

Moreover, on the same day *Ohralik* was decided, a companion solicitation/advertising case was also decided *In re Primus* 436 U.S. 412, 428 (1958). The lawyer there was also charged with solicitation while working for the NAACP.  The Court in *Primus* came to the opposite conclusion because the

restriction applied to *speech* not *conduct*. It overturned the discipline imposed. *Primus* holds litigation is a form of political expression. The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by all government." *NAACP v. Button*, 371 U.S. 415, 429 (1963). It is thus a form of political expression. *Ibid.* "It is no answer to the constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Id*. at 438-39.

Appellants further agree with the District Court that the right to join a fraternity at issue in *Pi Lambda Phi Fraternity, In.* is at best indirect and highly attenuated from the mutually reinforcing constitutional rights to expressive association and to petition the Pennsylvania courts for the redress of grievances that flow from Rule 204's blanket exclusion. The District Judge's citation of this college fraternity case begs the issue. It is as misplaced as a raft in the ocean in a hurricane. *Pi Lambda Phi Fraternity* has no relevance to the Constitutional rights to expressive association and petition that are the centerpiece of this appeal.

Additionally, in the Order denying reconsideration and rejecting *King*, the District Court states the following:

> "As I acknowledged in the memorandum, "[t]here is some level of First Amendment protection for the speech of lawyers practicing law." Doc. 40 at 31. I also agree that the rule at issue here may have some indirect impact on protected expression, when, for example, a lawyer licensed in a non-reciprocal state chooses not to practice in Pennsylvania because he wishes to avoid taking the Pennsylvania bar exam or seeking admission *pro hac vice*.

Nonetheless, the impact of the challenged rule in this case on protected speech is highly attenuated. See *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1958). In this case, Plaintiffs are challenging a rule with distant, indirect effects on a type of speech that *King* held receives "diminished protection" even when regulated directly." (4a-5a)

*King* does not hold professional speech receives "diminished protection." It holds the opposite; that the government bears the burden of proof and persuasion under both strict and intermediate scrutiny. The District Court confuses wholly unprotected speech (child pornography, fighting words, obscenity, *etc*.) with speech receiving "diminished protection" (advertising, draft-card burning.) This "diminished protection" analysis fails to subject the burdens imposed on Appellants to take Pennsylvania's bar exam as a condition predicate to associate with their clients and to petition the Pennsylvania Court to any heightened First Amendment scrutiny.  The District Judge gives the appellees *carte blanche*, no First Amendment scrutiny what-so-ever. The District Court ignores the fact that Pennsylvania has stipulated that the purpose of Rule 204, which requires that Appellants take Pennsylvania's bar exam, has nothing what-so-ever to do with either Appellants competence or client protection.  Rule 204 suppresses Appellants freedom to expressive association.

The Memorandum appealed also fails to subject Rule 204 to any Petition Clause analysis. Rule 204 plainly burdens the Petition Clause in the same way that literacy tests burden the right to vote, or the licensing of printing presses based on

content burdens the press. The effect of Rule 204 is otherwise qualified attorneys from disfavored states are disbarred in Pennsylvania unless they pass a content-based literacy test, that is graded based on content, and prove they are not a threat to the public but favored states' lawyers get to fight freestyle. There is little qualitative difference from being denied a seat on a train (Homer Plessy) in the 19th Century or seat on a bus (Rosa Parks) in the 20th Century on the invidious basis of skin color, than an otherwise qualified lawyer being denied a seat at the Pennsylvania bar in the 21st Century because he or she is from a disfavored state, and thus is a disfavored American citizen.

   The decision appealed holds the right to petition is constitutionally protected.  But it rejects Appellants' Petition Clause claim is one sentence:

> "While litigating as a party is protected by the Petition Clause, I am aware of
> no authority that litigating as a lawyer on behalf of another party receives the
> same protection." (47a)

   Once again, the District Court insulates Rule 204 from First Amendment scrutiny by first finding the First Amendment is inapplicable. Once again, the District Court mistakenly applies rational basis review and flips the burden of proof and persuasion on Appellants.  The District Court in circular reasoning holds Appellants cannot challenge a licensing precondition imposed by the Appellees that burdens the right to petition the state courts for the redress of

grievances because the Appellants are disfavored lawyers licensed in disfavored states.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49 (1993), the Court in construing the right to petition held that litigation could only be enjoined when it is a sham. To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process — as opposed to the outcome of that process — as an anti-competitive weapon. *Id*. at 60-61.

Rule 204 violates the Petition Clause because it enjoins and arbitrarily and irrationally presumes that the Appellants, and all experienced lawyers from non-reciprocity states, will file sham petitions for an anti-competitive purpose, and only file sham petitions for an anti-competitive purpose because they have not taken and passed another enormously burdensome entry-level licensing exam that is graded based on content. There is no evidence that experienced attorneys in good standing from non-reciprocity states will violate their professional responsibilities, and file sham petitions for an anti-competitive purpose. Moreover, it would be delusional to believe Appellants, because they are licensed elsewhere, will violate their professional responsibilities and sacrifice their good standing and reputation

in the states they are licensed.  Appellants' right to petition in Pennsylvania for

members of the bar from ten disfavored states has been abridged.

## III. RULE 204 VIOLATES THE ARTICLE IV § 2 PRIVILEGES AND IMMUNITIES CLAUSE

The District Court erred in formulating and applying legal precepts under the

Privileges and Immunities Clause. In the seminal case *Supreme Court of New*

*Hampshire v. Piper*, 470 U.S. 274 (1985), the Supreme Court held,

> The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right." We believe that the legal profession has a noncommercial role and duty that reinforce the view that the practice of law falls within the ambit of the Privileges and Immunities Clause.[fn11] Out-of-state lawyers may — and often do — represent persons who raise unpopular federal claims. In some cases, representation by nonresident counsel may be the only means available for the vindication of federal rights. *Id*. at 281-82.

*Piper* further holds Article IV Sec. 2 Privileges and Immunities historically

include professional pursuits including petitioning the courts. *Piper* further

recognized that many of the States have put up barriers primarily to protect their

own lawyers from professional competition, which is not a legitimate state interest.

*See* 470 U.S. at 285 n. 18 (1985)("The Privileges and Immunities Clause was

designed primarily to prevent such economic protectionism.") Pennsylvania has

admitted the justification for Rule 204 is to protect its own lawyers' economic

interests. Economic turf protection is not a substantial state interest. Rule 204 does

not protect Pennsylvania citizens: It impermissibly protects Pennsylvania lawyers.

***Piper holds that pro hac vice admission is not a reasonable alternative***. (Emphasis added) *Id*. at 284 n. 16. *Piper* further applied the strict scrutiny, least restrictive alternative test. *Id*. at 294 The Memorandum appealed vacates *Piper*.

More particularly, *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988), squarely holds that bar admission on motion for sister-state attorneys is a constitutionally protected Privilege and Immunity. There, every out-of-state licensed attorney (i.e. citizen) would qualify for reciprocity if they moved to Virginia. Ms. Friedman did not want to move to Virginia to qualify. The discrimination there was plainly against applicants (out-of-state attorneys) on the basis of citizenship or residence, as they are interpreted interchangeably. Virginia argued Ms. Friedman could take the bar examination, and thus the Clause was not offended. The Supreme Court rejected this contention holding: "The issue instead is whether the State has burdened the right to practice law, a privilege protected by the Privileges and Immunities Clause, by discriminating among otherwise equally qualified applicants solely on the basis of citizenship or residency.  We conclude it has."  *Id.* at 67.  The norm under the Privileges and Immunities Clause is comity, i.e. equal treatment. The Supreme Court stated, "we see no reason to assume that nonresident attorneys who, like Friedman, seek admission to the Virginia bar on motion will lack adequate incentives to remain abreast of changes in the law or to

fulfill their civic duties." *Id*. at 69. *Friedman* holds the State has the burden of proof under the strict scrutiny standard.

In *Friedman*, Virginia disqualified all sister-state attorneys from 49 States on the basis of residence and citizenship. Here, Appellants ROSARIO and REVIERE live outside of Pennsylvania. They seek admission on motion in Pennsylvania. The facts here and in *Friedman* are virtually identical. Rule 204 categorically disqualifies Appellants and lawyers (citizen applicants) in ten disfavored states. If a state cannot disqualify otherwise qualified applicants from 49 states as in *Friedman*, it obviously cannot single out and disqualify applicants from ten disfavored states. Rule 204 on its face and as applied discriminates against otherwise qualified applicants. The Memorandum appealed vacates *Friedman*.

Even under the intermediate standard of review for licensing rules noted in *King,* Rule 204 fails. It obviously does not advance a substantial state interest because 40 states have already adopted reciprocal admission. Even assuming Pennsylvania has a substantial state interest in determining Appellants' competence and fitness to practice law, Rule 204 is not directly or closely related to advancing that state interest because the stipulated aim and purpose of Rule 204 establishes Rule 204 has nothing to do with client protection. Economic protection, is not a legitimate state interest, let alone a substantial state interest that is narrowly tailored under the Privileges and Immunities and Commerce Clauses.

The hub in the Memorandum appealed are the Third Circuit decision in *Tolchin v. Supreme Court of New Jersey*, 111 F.3d 1099, 1111 (3d Cir. 1997) and *Schumacher v. Nix*, 965 F.2d 1262, 1270 (3d Cir. 1992). These cases were employed as a basis for discarding *Piper* and *Friedman*, and every other argument Appellants submitted. *Tolchin v. Supreme Court of New Jersey* is misplaced because it has nothing to with bar admission on motion; the New Jersey bona fide office rule challenged there applied evenly to everyone. The New Jersey rules challenged there did not provide an exemption to lawyers from favored states and require compliance for lawyers from disfavored states as Rule 204 does.

The linchpin in the Memorandum appealed is *Schumacher v. Nix*. *Schumacher v. Nix* holds Pennsylvania has a substantial and rational interest in its reciprocal licensing Rule that facilitates licensing for some non-ABA accredited graduates, but not other non-ABA graduates. It was decided under the Equal Protection Clause and rational basis. The District Court stretched its holding to wipe out virtually every precedent Appellants argued. However, *Schumacher* provides little foundation because it does not cite either *Piper* or *Friedman*. It was also not decided under the First Amendment or Commerce Clause. It does not cite *Great Atlantic & Pacific Tea Co. v. Cottrell*, 424 US 366 (1976) or *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988), which holds state reciprocal

licensing restrictions are unconstitutional under the Commerce Clause; a subject that will be examined in the next section.

The District Judge built his entire Memorandum on *Tolchin* and *Schumacher*, to the point where he was blind to any subsequent precedent. These decisions been further undercut by over twenty-three years of subsequent precedent including this Court's decision in *King*. Neither *Schumacher* nor *Tolchin* were presented or argued under the First Amendment or *King*. The overarching error in the decision appealed is its unyielding application of the rubber stamp rational basis standard of review in a professional licensing case.

Appellants are entitled to Summary Judgment under the Privileges and Immunities Clause. Pennsylvania has not met its strict scrutiny, least restrictive alternative test burden of proof and persuasion. As in *Friedman*, Rule 204 discriminates among otherwise equally qualified sister-state attorneys in bar admission on motion, and it is thus unconstitutional. Rule 204 also cannot even pass muster under the intermediate standard of review.

## IV. RULE 204 VIOLATES THE DORMANT COMMERCE CLAUSE

### A. STANDARD OF REVIEW

The Supreme Court set forth:

"[T]wo-tiered approach to analyzing state economic regulation under the Commerce Clause. When a ***state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, the courts have generally***

***struck down the statute without further inquiry***. *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, 476 U.S. 573, 578-79 (1986).

When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, ***we have examined whether the State's interest is legitimate*** and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, supra, 476 U.S. 573, 578-79 (1986)). (emphasis added)

## B. RULE 204 IS *PER SE* INVALID BECAUSE IT DOES NOT REGULATE EVEN-HANDEDLY

The District Court erred in formulating and applying legal precepts under the

Commerce Clause. The decision appealed holds:

Heightened scrutiny does not apply to Rule 204. It does not discriminate against out-of-state commerce on its face, a fact which Plaintiffs do not contest. Nor is there other evidence that the purpose or effect of the Rule is to favor in-state economic interests over out-of-state interests. (32a)

Contrary to this conclusion, Appellants submit Rule 204 on its face and as

applied discriminates against out-of-state commerce by disqualifying otherwise

qualified applicants from ten states. Rule 204 *is per se* invalid because it regulates

unevenly on its face and as applied. It is further *per se* invalid because it's

stipulated purpose and effect is to discriminate against out-of-state lawyers and to

benefit Keystone State lawyers. Appellees have stipulated that these are the

interests served.

The Court need not engage in any further inquiry.  This conclusion is

obvious. Suppose for example, Pennsylvania passed a law holding that

professional athletes from ten states, or businesses with corporate headquarters in ten states, or milk suppliers from ten states, or newspapers published in ten states — are not allowed a license to do business in Pennsylvania, unless those states sign a reciprocity agreement.    States do not have discretion to add reciprocity contractual agreements as a prerequisite to enforce constitutional rights as if our charter was the Articles of Confederation.

## C.  RULE 204 IS INVALID AS A RECIPROCAL LICENSING RESTRAINT

The Commerce Clause second tier analysis holds:

"When, however, a statute has only indirect effects on interstate commerce and *regulates evenhandedly*, *we have examined whether the State's interest is legitimate* and whether the burden on interstate commerce clearly exceeds the local benefits." *Brown-Forman Distillers Corp. v. New York State Liquor Authority*, supra, 476 U.S. 573, 578-79 (1986)). (emphasis added)

In *Great Atlantic & Pacific Tea Co. v. Cottrell*, *supra*, 424 US 366 (1976),

"The question presented …  is whether Mississippi, consistently with the Commerce Clause, Art. I, § 8, cl. 3, of the Constitution,[2] may, pursuant to this regulation, constitutionally deny a Louisiana milk producer the right to sell in Mississippi milk satisfying Mississippi's health standards solely because the State of Louisiana has not signed a reciprocity agreement with the State of Mississippi as required by the regulation." *Id*. at 368.  The U.S. Supreme Court held, "The reciprocity clause thus disserves rather than promotes any higher Mississippi milk quality standards. Therefore this is a case where the "burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Ibid*.

The Rule 204 reciprocity clause under *Cottrell* thus disserves rather than promotes Pennsylvania's interest. The Memorandum (33a) mistakenly rejects

*Cottrell* because the milk suppliers there were totally excluded but in this case Appellants can take the bar exam. This distinction is illusory because the milk suppliers in *Cottrell* could also adhere to the state's milk licensing restrictions there.

As to the relevance of categorical denial of admission as a basis for distinguishing Supreme Court cases, Justice SCALIA for a unanimous Court in *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269 (1988), expressly held that a categorical exclusion is not needed to find a Dormant Commerce Clause violation based on a reciprocity provision of state law:

> It is true that in *Cottrell* and *Sporhase* the effect of a State's refusal to accept the offered reciprocity was total elimination of all transport of the subject product into or out of the offering State; whereas in the present case the only effect of refusal is that the out-of-state product is placed at a substantial commercial disadvantage through discriminatory tax treatment. That makes no difference for purposes of Commerce Clause analysis. 486 U.S. at 275.

Justice SCALIA then discussed *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935), and *Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333 (1977), and held that "[t]he present law likewise imposes an economic disadvantage [not total exclusion] upon out-of-state sellers[,] and the promise to remove that if reciprocity is accepted no more justifies disparity of treatment than it would justify categorical exclusion." *Id*. Because the decision appealed is directly in conflict with this holding in *New Energy*, it cannot stand.

*Supreme Court of Virginia v. Friedman*, *supr*a, 487 U.S. 59 (1988), also stands for the proposition that an alternative does not cure a constitutional violation. In that case a Bar admission rule was challenged under the Privileges and Immunities Clause of Article IV § 2. The plaintiff in *Friedman* sought admission on motion to the Virginia Bar, but was denied because she did not reside in Virginia, as required by the applicable Virginia rule. The defense was that she could still be admitted by taking the bar exam, *Id*. at 65, but the Court rejected that alternative as legally insufficient.

> "Nothing in our precedents, moreover, supports the contention that the Privileges and Immunities Clause does not reach a State's discrimination against nonresidents when such discrimination does not result in their total exclusion from the State. (Emphasis added) Indeed, as the Court of Appeals correctly noted, the New Hampshire rule struck down in [Supreme Court of *New Hampshire v. Piper*, 470 U.S. 274 (1985)] did not result in the total exclusion of nonresidents from the practice of law in that State." *Id*. at 66.

To the extent that the appealed Memorandum based its conclusion on the ground that taking a bar exam is only a modest burden, that proposition was also rejected in *Friedman* at 68: "A bar examination, as we know judicially and from our own experience, is not a casual or lighthearted exercise." Indeed, the whole purpose of admission on motion is to allow eligible attorneys to avoid taking another bar exam because of the burdens that it imposes on those who have already passed one such exam. Although *Friedman* is a Privileges & Immunities Clause case, that Clause has a similar purpose. This similarity of purposes is evidenced by

the Supreme Court's citation of Privileges & Immunities cases, such as *Hicklin v. Orbeck*, 437 U.S. 518 (1978), and *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371 (1978), in Dormant Commerce Clause decisions, such as *Sporhase*. See 458 U.S. at 956-57. The Privileges and Immunities Clause has a similar purpose to those animating the Dormant Commerce Clause: to eliminate competition protection. Territorial protection is unlawful as a matter of law under the Commerce and Privileges and Immunities Clauses. *See Supreme Court of New Hampshire v. Piper*, *supra*, 470 U.S. at 285 n. 18 (1985)("The Privileges and Immunities Clause was designed primarily to prevent such economic protectionism.")

Even if it qualified for second tier analysis, Rule 204 fails ***because economic protection is not a legitimate state interest***. (emphasis added) . Rule 204 runs afoul of *Great Atlantic & Pacific Tea Co. v. Cottrell* and *New Energy Co. of Indiana v. Limbach*. Rule 204 prevents competition. It does not benefit Pennsylvania legal service consumers. It injures them.

## V. RULE 204 VIOLATES THE EQUAL PROTECTION CLAUSE

The District Court erred in formulating and applying legal precepts under the 14th Amendment Equal Protection Clause. It is well settled law that "a State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a

rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239 (1957). The Third Circuit has held, "As plaintiffs point out, it is difficult to glean any nexus between whether a state has reciprocity with Pennsylvania and whether it accords mutual treatment to Pennsylvania attorneys who are graduates of unaccredited law schools." *Schumache*r, 965 F.2d at 1271. Pennsylvania has admitted Rule 204 has nothing what-so-ever to do with client protection or Appellants (or otherwise qualified attorneys from ten non-reciprocity states) fitness or capacity to practice law in Pennsylvania or in the non-reciprocity states. It thus runs afoul of *Schware* because *King* holds the intermediate standard of review is the minimum threshold for speech related professional licensing rules. *Schware* was not a First Amendment case, or a Privileges and Immunities Clause, or Commerce Clause case. *Schware,* which was decided over fifty years ago, has been superseded by *King*.

Rule 204 also fails both exacting and intermediate review because it is underinclusive. Pennsylvania does *not* discriminate against ten disfavored states, or require five of seven years of prior experience, to qualify for Pennsylvania admission as a Registered Legal Service Attorney,[9] Registered In-house Counsel,[10]

---

[9] Pennsylvania Supreme Court Rule 311.
[10] Pennsylvania Supreme Court Rule 302.

and through *Pro Hac Vice* admission.[11]   There is no minimum experience requirement. This demonstrates Rule 204 does not directly advance a substantial state interest, and that there are obvious less restrictive alternatives available. It cannot be plausibly presumed that attorneys from non-reciprocity states can be safely trusted to represent the indigent, corporations, and *pro hac vice*, but not others. It cannot be rationally presumed that on one day sister-state lawyers are qualified to represent Pennsylvania corporations and indigents including going into court under Rules, and the next day when representing a different Pennsylvania client they are not. It cannot be rationally presumed that lawyers (or judges) licensed by bar examination are any more or less qualified than lawyers admitted by motion.  The Supreme Court has repeatedly held it will not presume out-of-state licensed lawyers will disserve their clients or trespass their professional obligations. The constitutional norm is comity, i.e. reciprocity.

It is beyond cavil that it is constitutionally prohibited to single out and disadvantage an unpopular group. *United States v. Windsor*, __ U.S. __, 133 S.Ct. 2675 (2013).  In *Romer v. Evans*, 517 U.S. 620 (1996), the Court held that an amendment to a state constitution, ostensibly just prohibiting any special protections for gay people, in truth violated the Equal Protection Clause, under even a rational basis analysis. In *Romer*, the Supreme Court struck down

---

[11] Pennsylvania Supreme Court Rule 301.

Colorado's Constitutional Amendment 2 because, the Court held, "[w]e cannot say that Amendment 2 is directed to any identifiable legitimate purpose or discrete objective. It is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests; it is a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Id*. at 635. The Supreme Court deemed this "class legislation ... obnoxious to the prohibitions of the Fourteenth Amendment." *Ibid*.  Rule 204, similar to the laws targeting gays and lesbians, is obnoxious status-based rule making enacted to target an unpopular group

## VI. CONCLUSION AND REQUESTED RELIEF

In view of the foregoing. Appellant request the following relief:

- An Order vacating and reversing the decision below.

- An Order declaring the Pennsylvania Supreme Court Rule 204(2) reciprocity requirement, and 204(4)-(5) five year practice requirements invalid and unconstitutional, and enjoining their enforcement.

- An Order holding Appellants ROSARIO and REVIERE are qualified for a Pennsylvania law license.

- Costs.

- Attorney fees.

- Grant such other relief as may be just and proper.

Dated:  March 26, 2015            */s/ Joseph Robert Giannini*
                                  Joseph Robert Giannini, Esq.
                                  PA State Bar 38814
                                  Attorney for Plaintiffs NAAMJP et. al.
                                  12016 Wilshire Blvd. Suite 5
                                  Los Angeles, CA 90025
                                  Phone 310 207 1776
                                  Email j.r.giannini@verizon.net

## CERTIFICATION AS TO COMPLIANCE WITH TYPE VOLUME LIMITATIONS

Appellants' Opening Brief complies with the type-volume limitations. This Opening Brief word count is 13,865 words.

Date: March 26, 2015            /s/ *Joseph Robert Giannini*
                                _____
                                Joseph Robert Giannini

## CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check on this Opening Brief was performed by ESET Smart Security before it was electronically filed.

                                s/ *Joseph Robert Giannini*
                                _____
                                Joseph Robert Giannini

## CERTIFICATE OF PAPER COPIES ARE THE SAME AS ELECTRONIC COPIES

I hereby certify that the electronic copies are the same as the paper copies.

                                s/ *Joseph Robert Giannini*
                                _____

Joseph Robert Giannini

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Opening Brief at the same time with the Clerk of the Court for the Third Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Seven paper copies were served on the Court and one copy was served on opposing counsel.

Dated: March 26, 2015                    /s/ *Joseph Robert Giannini*
                                         Joseph Robert Giannini